TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
AMANDA B. ELBOGEN (Cal. Bar No. 332505)
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5748
    Facsimile: (213) 894-0141
    E-mail:    amanda.elbogen@usdoj.gov
               juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00357-JAK |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION AS TO DEFENDANT GABRIAN WEHMEYER |
| v. | Hearing Date: May 2, 2022 |
| GABRIAN WEHMEYER, | Hearing Time: 8:00 a.m. |
| Defendant. | Location:   Courtroom of the Honorable John F. Walter |

        Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Amanda B. Elbogen
and Juan M. Rodriguez, hereby files its Sentencing Position as to
defendant GABRIAN WEHMEYER.

//

//

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 11, 2022                    Respectfully submitted,

                                         TRACY L. WILKISON
                                         United States Attorney

                                         SCOTT M. GARRINGER
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                              /s/ Amanda Elbogen
                                         AMANDA B. ELBOGEN
                                         JUAN M. RODRIGUEZ
                                         Assistant United States Attorneys

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3     On February 18, 2022, defendant Gabrian Wehmeyer ("defendant")

4  pled guilty to distributing fentanyl, in violation of 21 U.S.C. §§

5  841(a)(1), (b)(1)(A)(vi); possessing with intent to distribute

6  fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi); and

7  possessing with intent to distribute methamphetamine, in violation of

8  21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), as charged in Counts One,

9  Two, and Three of the Indictment.  (Dkt. No. 28.)

10     On March 28, 2022, the United States Probation and Pretrial

11  Services Office ("Probation") filed its Presentence Investigation

12  Report ("PSR") (Dkt. No. 34) and Recommendation Letter ("RL") (Dkt.

13  No. 33).  Probation calculated a total offense level of 31 and a

14  Criminal History Category of I, resulting in a United States

15  Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 108 to

16  135 months' imprisonment, with a mandatory-minimum sentence of 120

17  months' imprisonment and five years' supervised release.  (RL at 1-

18  2.)  Probation therefore determined the applicable Guidelines range

19  to be 120 to 135 months' imprisonment.

20     The government concurs with Probation's recommendation of a

21  sentence of 120 months' imprisonment followed by five years of

22  supervised release, and a special assessment of $300, or $100 per

23  count, as required by the statute.  (<u>See</u> <u>id</u>.)  The government submits

24  that such a sentence is sufficient, but not greater than necessary,

25  to achieve the purposes set forth in 18 U.S.C. § 3553(a).

26

**II.   STATEMENT OF FACTS**

27     At his change of plea hearing, and in paragraph 23 of his plea

28  agreement, defendant admitted to the following:

On June 18, 2021, defendant knowingly and intentionally distributed approximately 548 grams of fentanyl, a schedule II narcotic drug controlled substance, to another person.  On July 26, 2021, defendant knowingly and intentionally possessed with the intent to distribute approximately 2.08 kilograms of fentanyl and 31 grams of actual methamphetamine, a schedule II controlled substance. Defendant knew that the substances he distributed and possessed with intent to distribute were fentanyl and actual methamphetamine.  Also on July 26, 2021, in furtherance of and in relation to defendant's possession with intent to distribute fentanyl and methamphetamine, defendant knowingly and intentionally possessed and carried two loaded firearms: a gold Glock, model 20 Gen4, 10mm caliber pistol, bearing serial number BNNR700 (the "gold Glock"); and a black Glock, model 22 Gen5, .40 caliber pistol, bearing serial number BSRC754 (the "black Glock").  (Dkt. No. 28 ¶ 23.)

Specifically, on June 18, 2021, defendant mailed a package containing approximately 1,010 fentanyl pills (weighing approximately 548 grams) from a post office in Lakewood, California, to another person.  Defendant hid the fentanyl pills inside a salt container inside the package.  (Id.)

On June 23, 2021, a confidential informant ("CI") working for the Federal Bureau of Investigation told law enforcement agents that, over the past four months, the CI had bought approximately 30,000 fentanyl pills from defendant in exchange for approximately $120,000. (Id.)

Between July 7 and 12, 2021, defendant arranged to sell 3,000 fentanyl pills to the CI in exchange for $12,000.  On July 8, 2021, defendant told the CI to mail $12,000 to an address in Maywood,

California.  On July 12, 2021, defendant sent the CI a picture of a bag of fentanyl pills pressed against defendant's head.  Defendant told the CI that defendant would mail the CI more fentanyl pills than they had previously agreed, and the CI should send defendant extra money for the extra pills after the CI sold the pills to customers.  Later on July 12, 2021, defendant mailed approximately 5,000 fentanyl pills from a post office in Bell Gardens, California, to the CI.  (Id.)

On July 26, 2021, law enforcement agents searched defendant's apartment, car, and person.  In defendant's apartment (where defendant lived alone), defendant had approximately 30,000 fentanyl pills (weighing approximately 2.08 kilograms); a disassembled assault rifle bearing no legitimate serial number, commonly known as a "ghost gun"; ammunition; a bulletproof vest; and the packaging defendant used to ship drugs.  In defendant's car, defendant had the gold Glock, loaded with 11 rounds of ammunition and outfitted with optics, under the front passenger seat; the black Glock, also with optics and loaded with 15 rounds of ammunition, under the driver's seat; a Glock extended magazine containing seven rounds of ammunition, in the center console; and 31 grams of actual methamphetamine in the glove compartment.  In defendant's pockets, defendant had approximately $746 in cash, as well as several used brass shell casings that matched the caliber of the firearms in defendant's car.  (Id.)

On July 26, 2021, in a post-arrest interview, defendant admitted that he had methamphetamine and two guns in his car, sold fentanyl pills and other controlled substances over the internet, and used the profits from his drug sales to purchase jewelry, including a gold "EZ Life" necklace, a copper bracelet, and a yellow ring with a "last

1  supper" emblem.  (Id.)

2       On his Instagram, Snapchat, and other social media accounts,

3  defendant posted several videos and photos showing his drug

4  trafficking, including large quantities of fentanyl pills and the

5  packaging defendant used to ship drugs.  Defendant also posted videos

6  and photographs to his social media accounts showing multiple guns,

7  including semi-automatic pistols, assault rifles, and sniper rifles.

8  (Id.)

9  **III. THE PRESENTENCE INVESTIGATION REPORT AND GUIDELINES CALCULATIONS**

10      On March 28, 2022, Probation disclosed a Presentence

11 Investigation Report for defendant, calculating a criminal history

12 category of I based on a total criminal history score of zero.  (PSR

13 ¶ 44.)  The government concurs with the USPO's criminal history

14 calculation and agrees that defendant's criminal history yields a

15 criminal history category of I.

16      Pursuant to the terms of the plea agreement filed in this case,

17 the parties have stipulated to the following: a base offense level of

18 32, pursuant to U.S.S.G. § 2D1.1, and a two-level enhancement,

19 pursuant to U.S.S.G. § 2D1.1(b)(1), because defendant possessed a

20 dangerous weapon.[1]  (Dkt. No. 28 at 4.)

21      Assuming defendant demonstrates acceptance of responsibility up

22 to and including the time of sentencing, defendant would be entitled

23 to a two-level reduction for acceptance of responsibility under

24 U.S.S.G. § 3E1.1(a).  The government also recommends an additional

25 one-level variance in recognition of defendant's lessening the burden

26 on the court system and the prosecution under U.S.S.G. § 3E1.1(b).

27 _____

28      [1] Due to his possession of a firearm, defendant is not safety-
   valve eligible.

                                    4

**IV.   THE GOVERNMENT'S SENTENCING RECOMMENDATION**

Based on a total offense level of 31, a criminal history category of I, and the applicable statutory mandatory minimum of 120 months' imprisonment, the resulting advisory range is 120 to 135 months' imprisonment.  (PSR ¶ 92.)  Consistent with Probation's recommendation, the government respectfully recommends that the Court impose the mandatory minimum of 120 months' imprisonment, followed by a mandatory minimum five-year period of supervised release, and a special assessment of $300.

The government submits that such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

**A.   Nature and Circumstances of the Offense**

The nature, circumstances, and seriousness of defendant's offense warrant a custodial sentence at the low end of the Guidelines range.  See 18 U.S.C. § 3553(a)(1).  Defendant distributed 548 grams of fentanyl, possessed with intent to distribute 2.08 kilograms of fentanyl, and possessed with intent to distribute 31 grams of actual methamphetamine.  (Dkt. No. 28 ¶ 23.)  The continued distribution of illegal drugs poses a serious danger to the community, especially the distribution of fentanyl, a potent and often deadly opioid.  On balance, the seriousness of the offense and defendant's role in it supports a sentence at the low-end of the Guidelines range, i.e., the statutory mandatory minimum.

**B.   History and Characteristics of Defendant**

The history and characteristics of defendant additionally counsel in favor of the mandatory-minimum sentence.  See 18 U.S.C. § 3553(a)(1).  As noted above, defendant's offense is both serious

and dangerous.  However, significant mitigating circumstances warrant a sentence no higher than the mandatory minimum.

First, defendant was 18 years old at the time of his arrest and part of his conduct occurred while he was still a minor.  He has no prior convictions and therefore no criminal history points.  (PSR ¶¶ 43-44.)[2]

Second, defendant's difficult and unstable upbringing is highly mitigating: his mother abused methamphetamine, including while he was in utero, and his father was in jail or otherwise absent most of his life.  (PSR ¶¶ 53-54.)  His mother was physically abusive, leading to the intervention of the Department of children and Family Services on at least three occasions.  (PSR ¶ 55.)  At the age of 14, defendant's family became homeless, living in shelters in Skid Row and elsewhere, and sleeping in a van.  (PSR ¶ 57.)

Defendant's history and characteristics, and his acceptance of responsibility for his crimes, all weigh in favor of a lower sentence in this first conviction.  Defendant has not served any time in prison, meaning a 120-month sentence, consistent with the mandatory minimum, is sufficiently punitive and is likely to have a significant deterrent impact.

---

[2] However, defendant does have two prior arrests and pending state charges.  On January 29, 2021, he was arrested by the Los Angeles County Sheriff's Department for Possession of a Controlled Substance While Armed, Carrying a Loaded Firearm, Carrying a Concealed Firearm, and Disobeying a Peace Officer.  (PSR ¶ 47.)  On March 5, 2021, he was arrested for possession of a controlled substance while armed and carrying a concealed firearm.  (PSR ¶ 48.)  Bench warrants were issued in both cases for his failures to appear in court.  (PSR ¶¶ 47-48.)  Defendant also has pending charges in the Los Angeles County Superior Court for two traffic violations.  (PSR ¶ 46.)

**C.   Need To Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public**

A 120-month sentence will also satisfy the need for punishment and rehabilitation, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public.  See 18 U.S.C. § 3553(a)(2).  Here, there is a particularly strong need for the sentence to deter defendant and others from committing future crimes because defendant distributed a large quantity of fentanyl, and possessed with intent to distribute large quantities of fentanyl and methamphetamine: serious offenses that poses a real danger to the community.  See 18 U.S.C. § 3553(a)(2)(B) (the sentence imposed must "afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence).  That said, given defendant's minimal criminal history, difficult life circumstances, and acceptance of responsibility, defendant poses a relatively low risk of recidivism.

As defendant has never served a prison sentence before, a sentence of 120 months should deter him from future criminal activity and impress upon him the seriousness of his crimes.  Such a sentence is sufficient to deter defendant in the future, protect the public, and would provide a significant warning to others seeking to make quick money by engaging in drug trafficking, especially for drugs as dangerous and deadly as fentanyl.  As such, a 120-month sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter defendant from committing further crimes, and protect the public from further crimes.

**D.   Need To Avoid Unwarranted Disparities**

A 120-month sentence will also minimize sentencing disparities among similarly situated defendants.  See 18 U.S.C. § 3553(a)(6). One way of avoiding such disparities is to correctly calculate the Guidelines range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  Here, under the correctly calculated Guidelines range, other defendants "with similar records who have been found guilty of similar conduct" as defendant can expect a sentence between 120 and 135 months.  As such, the government's recommended sentence, within that range, avoids an unwarranted disparity with similarly situated defendants.

**E.   Fine, Federal Benefits, and Participation in RDAP**

The government agrees with the Probation Office that defendant is unable to pay a fine and that any income he earns upon release should be used to reestablish himself in the community.  (RL at 1, 5.)  Moreover, the government agrees that any deprivation of federal benefits would be inappropriate.  (Id. at 5.)  See 18 U.S.C. § 862(a)(1)(A) (leaving to the Court's discretion a defendant's eligibility for federal benefits after a first or second drug distribution crime); U.S.S.G. § 5F1.6 (noting same).  Finally, in light of defendant's substance abuse history, the government supports defendant's participation, if eligible, in the Bureau of Prisons' Residential Drug Abuse Program ("RDAP").  (See RL at 4-5.)

## V.    CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 120 months' imprisonment, five years of supervised release under the terms and conditions recommended by the USPO, and a $300 special assessment.